JUDGE ROANE.
This is a bill brought by the appellee against the Attorney-General, in the High Court of Chancery. After having shown, in certain, how the lot of land in controversy, (the Governor’s garden,) formerly his property, became vested in the Commonwealth ; it having been appropriated and condemned by the Directors of the Public Buildings, and afterwards commuted by them for another lot given by him to the public in consideration of erecting the public buildings thereon, which condition, however, was never complied with ; he prays that the donation lot may be restored to him without retaining compensation in the lot (the garden) now in question ; that compensation may be made him for the loss sustained by the diminution in the value of his land, (thirty acres,) detained for a considerable time by the public, and, afterwards, except the Jot in question, restored to him ; and for general relief. The prayer is, therefore, substantially, either for the garden itself, specifically, or its value, in consequence of the grounds of equity on which his claim is founded; and for compensation for the injury as aforesaid. On none of those grounds, except for the value of the lot, could an application to the Auditor have been proper ; nor, indeed, was it proper as to it, considering that the question respecting it arose out of a complication of facts and circumstances, making it a fit case for the exclusive cogni-sance of a judicial tribunal; and, especially, as no apportionment of the value of that lot had *ever taken place, whereby the Auditor would have been enabled to ascertain the extent of the claim. The non-existence of such apportionment, while it presents an insuperable bar to the progress of the Auditor, shews the necessity for an application to a Court of Equity.
This then being a case in which an application neither was, nor properly ought to have been made to the Auditor in the first instance, a question arises whether the ordinary jurisdiction of the Court of Equity ceases to exist, as to it, in consequence of the sovereign character of the Commonwealth.
In the case of the Commonwealth v. Beaumarchais, it was held, with great force and justice, by this Court, that every just government ought to provide a tribunal competent to decide all claims and demands against itself. The president, in delivering his opinion in that case, seems to put the petition of appeals from the decision of the Auditor upon the ground of the petition of right in England ; and adds, that, although in high prerogative times, it was held necessary that the king should underwrite, “let justice be done to the party,” yet that that has been long dispensed with, and the petition of right resorted to as an ordinary proceeding. In that case indeed, it was not particularly decided (because it was unnecessary) that the latter part of the sixth section of the Auditor’s law(d) extended to cases other than pecuniary, or to cases in which a resort to the Auditor was not proper in the first instance. It is certain, however, that the general scope of the decision seems to go that length; and most of the counsel on both sides seem to have considered that part of the section as properly applying to cases not of a pecuniary nature.
There can certainly be no good reason with a just government why this should not be the case ; and the words are extremely comprehensive. The clause is, “where the Auditor, acting according to his discretion *763 and judgment, shall disallow, or abate any article of demand against the Commonwealth, and any person shall think himself aggrieved thereby, he shall be at lib-erty to petition the High *Court of Chancery, or the District Court, holden at the city of Richmond, according to the nature of his case, for redress ; and such Court shall proceed to do right thereon ; and a like petition shall be allowed in all other cases to any other person who is entitled to demand against the Commonwealth any right in law or equity.” This section is literally taken mutatis mutandis from the 5th section of the Auditor’s law of 1778.(a) Under the act of 1778, the jurisdiction of the Courts might be less clear than under the act of 1792, in a case like the present ; for as that act had, in a previous section, pointed out the cases, particularly, in which the auditor should act, it might have been argued that the general words, now in question, were put in to embrace other cases of like character, which had not been enumerated. But those general words are kept up in the act of 1792, after a general grant of power to the Auditor to settle and audit “all claims and demands whatsoever against the public, arising under any law or resolution whatsoever.” The first part of the 6th section allowing a petition is commensurate with this power, and grants redress where it is abused : the latter words, therefore, mean nothing, unless they go beyond it. The expression “like petition,” only means a petition to the Court of Chancery or District Court, respectively, as the case may be, and is not tied down to the case of a claim rejected by the Auditor. A broader privilege is granted by the justice of the Legislature ; that any person entitled to demand “any right in law or equity” against the Commonwealth, may prefer his petition, and that the proper Court shall “proceed to do right thereon.” The actual case before us has a strong analogy to those in which petitions of right are proper and admissible in England :(b) the legislative provision now in question may be considered as a general license “that justice shall be done the party:” and the legislature, having thus attained the essence of the transaction, is regardless of form. Consequently it does not adopt the modes and forms of proceedings in England, applicable to petition on right, but allows a party to proceed as in other cases by a bill in equity : such has been *the uniform practice on this subject from the beginning, and there is no doubt but that the term “petition” may well be satisfied by a bill in equity.
I shall therefore consider this case as if the appellant were a private person ; and this brings us to the merits.
With respect to the plea and demurrer in this case, they were both rightly overruled : the first, because an application to, and decision by, the .Legislature, is no bar to the equity of this Court ;(c) and the last, because, if the appellee has any title to the lot in question, it is an equitable one only, and not a legal one.
I will next consider the case upon the answer and proofs. The donation of the two acres was made on a condition, which has failed; or, at least, under a belief entertained by one party, and communicated to and not gainsayed by the other. Col. Goode was a Director at the time, and acted as the friend and agent of Turpin in making the offer of the donation, and his testimony is strong to the above effect. Mr. Hay was not a Director at the time, and nothing said by him, or any other, can do away the above result as depending on Goode’s testimony. In the event that happened, that the Public Buildings were not placed on Turpin’s land, he did not contract to cede to the Commonwealth any thing. The Directors therefore were mistaken in 1783 in considering the two acres as a donation, and commuting it for the lot in question. Yet they considered (under the act of 1787) the lot in question as necessary for the public use ; they have not reconveyed it; and, thinking it necessary, ought not to have reconveyed it: but Mr. Turpin is entitled to be paid for it, as if the donation of the other lot had never been made.
In consequence of the Directors’ restoring to Turpin all his other lands, under the act of 1787, except the lot in question, and retaining it as a donation, Turpin was to receive no money from the public, and therefore, I presume, no valuation has been made as directed by the act of 1787: it was to no purpose to value and apportion the land, as Turpin was to receive nothing therefor. The Directors having *erred to his prejudice, as above mentioned, I am of opinion that the lot in question (or the returned land, it is immaterial which) should be valued by the rule laid down by that act, and Turpin be paid therefor, with interest from the date of the act of 1787. As to prior interest, it is not shewn that application was made by Turpin for the money which, under the act of 1778, he was entitled to demand from the public. It further appears, that up to that time Turpin was willing to consider the appropriation and valuation of his land as not conclusive, and was ever willing, and perhaps desirous, to take back such part of his land as was not wanting for the use of the public. Being, therefore, perhaps, not desirous to receive the money, and, in fact, not having applied therefor, he is not entitled to interest. As to any loss sustained in the sale of his land, in consequence of the detention of it by the public, the act authorising a reconveyance to him thereof was founded on his application. He petitioned to take back the land ; and this must be considered as a relinquishment of any damages accruing to him from the detention, if, in fact, there were any.
Upon the whole, I am of opinion that Turpin is entitled to a decree for the value of the lot in question, with interest from the date of the resolution of the Directors by which the two acres were retained for the use of the public ; and that the decree of the Chancellor should therefore be reversed, and reformed pursuant to the foregoing ideas.

 Rev. Code, V. 1, p. 140.

ta) Cti’rs. Revisal, p. 81.

Cb) See 3 Bl. Com. 256.

 Commonwealth v. Beaumarchais.